KNIGHT REALTY COMPANY, INC. *v.* JOHN CASERTA
ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued November 7—decided December 6, 1939.

*Charles Weingarten,* with whom was *John B. Canty,* for the appellant (plaintiff).

*Samuel E. Friedman,* for the appellees (defendants).

AVERY, J.  The plaintiff brought this action seeking to recover for services as real estate broker in procuring a customer for the defendants' real estate. The case was tried to the jury and a verdict returned in favor of the defendants from which the plaintiff has appealed. The only questions involved on this appeal are claimed errors in the charge of the court to the jury relating to the right of the seller to terminate the broker's employment.

At the trial, the plaintiff claimed to have proved these facts: Prior to May 9, 1938, the defendants listed real estate belonging to them with the plaintiff, a real estate broker. The sale price was $20,000, payment to be in cash after deducting existing mortgages and adjustments of taxes, interest, etc., the commission to be 5 per cent. of the purchase price. The plaintiff, through its officers and employees, endeavored to make a sale and incurred expenses in advertising the property, and a short time prior to May 9, 1938, interested Altieri in the purchase. Altieri made an offer of $17,500 to an officer of the plaintiff who discussed this offer with the defendant John Caserta and the latter agreed to take $19,000 as the purchase price payable in cash after deducting existing mort-

gages and adjustments of interest, rent, etc. A little later, on May 9th, a written contract of sale was drawn and signed by the Altieris agreeing to purchase the property on these terms and a check of $500 was deposited by them by way of deposit. That evening an officer of the plaintiff submitted the contract to the defendants who declined to sell. The Altieris waited for a month for the defendants to consummate the sale and during that time were ready, able, and willing to purchase upon the terms agreed but the defendants refused to conclude the transaction.

The defendants claimed, among other things, first, that they never agreed to sell the property for $19,000, and, second, that before the contract of sale was made between the plaintiff and the Altieris they had notified the plaintiff that they would not sell the property.

In its instructions the trial court informed the jury that, "If the defendants or either of them intended to withdraw the properties from the market for sale and not to sell them but to keep them themselves, then they were required, either or both of them, to act in good faith in the matter. In other words, the defendants or either of them could not make an agreement with the plaintiff and then arbitrarily cancel it or abrogate it and deprive the plaintiff of its commission if it had been earned. They were required to act reasonably under all the circumstances and they could not knowingly permit the plaintiff to continue in its efforts to sell the property without notification within a reasonable time by the defendants or either of them, that the defendants had changed their minds or determined not to sell the properties or that they had sold them to someone else. The defendants did have the right to sell the property to someone else while the plaintiff was endeavoring to find a purchaser for it. The defendants did have a right to say to the plaintiff

at some stage of these proceedings that they had decided to withdraw the properties from the market and not to sell them for any reason whatever it might be, but, in doing that, the defendants were required to exercise good faith and to treat the plaintiff reasonably, and if the defendants did treat the plaintiff reasonably in that respect and did not arbitrarily withdraw the properties from the market and did not arbitrarily refuse to accept the purchaser whom the plaintiff claims to have found, then . . . the defendants would not be liable."

The substance of the plaintiff's contention on this appeal is that the trial court should have informed the jury that, under the circumstances of this case, the defendants could not withdraw after the plaintiff had secured a customer ready, able, and willing to buy and had notified the defendants to that effect. The general principle is stated to be, "If the principal has given to the broker what purports to be his complete terms and the broker produces a customer ready, able, and willing to enter into the transaction on those terms, the principal cannot thereafter avoid paying the agreed commission by declining to enter into the transaction, or by insisting upon variations of or additions to such prescribed terms which the customer is unwilling to accept." Restatement, 2 Agency, 1039. "The general listing of property with a real estate broker for sale, without special agreement, does not give rise to such mutual obligations as in themselves constitute a contract. 1 Mechem, Agency, § 31. Such a listing of property approximates rather an offer by the owner, which he may withdraw at any time, but which ripens into a contract when the broker meets its terms by producing one who is able, ready, and willing to buy on the terms stated, or on terms satisfactory to the owner." *Skene* v. *Carayanis,* 103 Conn. 708,

713, 131 Atl. 497; *Scofield* v. *Second Universalist Soc.*, 102 Conn. 156, 161, 128 Atl. 290; *Harris* v. *McPherson,* 97 Conn. 164, 169, 115 Atl. 723. Upon this phase of the case, and under the claims of the parties, the trial court should have informed the jury that the defendants could not withdraw from the sale of the property after the plaintiff had produced a purchaser able, ready, and willing to buy upon the defendants' terms and they had been informed of this fact, but up to that time the defendants could rightfully withdraw their offer. The charge of the court was erroneous in this respect. We cannot say, however, that the error was harmful. The answer of the defendants was a general denial. No requests were made of the trial court for specific instructions at the trial, and there was no request by the plaintiff for a submission of interrogatories to the jury and none were in fact submitted.

At the trial, two principal issues were presented; first, whether the defendants had ever offered to sell the property at the price which the prospective purchasers agreed to pay; and, second, whether, if they had, that offer had been withdrawn and if so, whether the withdrawal was made before or after the purchaser was obtained by the plaintiff. The verdict was a general one. In *Ziman* v. *Whitley,* 110 Conn. 108, 147 Atl. 370, we reconsidered the effect of a general verdict with reference to the principle that where two or more causes of action or defenses are presented, error as to one alone will not be held to be ground of reversal, and we said (p. 115): "So where in a complaint or answer, although separate counts or defenses are not stated, reliance is placed upon grounds of action or defense which are distinct, not because they involve specific sets of facts forming a part of the transaction but in the essential basis of the right relied upon, the

interrogatories should on proper request of counsel be submitted. . . . Where, however, different specifications of fact are alleged in support of one essential right, as where various grounds of negligence are alleged as a basis for a recovery for injuries resulting from a particular accident, it is the sounder policy to permit an appellant to take advantage upon appeal of errors affecting one specification of negligence only, even though no interrogatories have been submitted." We based that decision upon the practical difficulties which might result in the absence of a definitive statement of the situations where the rule would apply and the danger of confusion in the issues presented should interrogatories be required where the issues to be determined are not clearly defined.

We further said in that case (p. 115): "So where in an answer separate defenses are properly pleaded, it is sound policy to require that, if a verdict is rendered for the defendant, it shall state upon which of the defenses it is based." We also illustrated what we meant by suggesting forms of verdict which might be used where an answer contained a general denial or admissions and denials and also a special defense. Obviously, to apply the rule concerning a general verdict to various grounds of defense admissible under mere denials of a complaint would be to produce the very evils we were seeking to avoid, as regards complaints, by our decision in *Ziman* v. *Whitley*. Consideration has led us to the conclusion that the rule concerning the effect of a general verdict, with the consequent right of the parties to have interrogatories submitted, should not be applied to grounds advanced to defeat the claimed cause of action which are admissible under mere denials of the facts alleged in the complaint, *Krowka* v. *Colt Patent Fire Arm Mfg. Co.*, 125 Conn. 705, 708, 8 Atl. (2d) 5, but should be ap-

plied between such matters and matters which are or should be specially pleaded or upon two or more defenses of the latter class. *Beauton* v. *Connecticut L. & P. Co.,* 125 Conn. 76, 83, 3 Atl. (2d) 315.

It is true that in *Altieri* v. *Peattie Motors, Inc.,* 121 Conn. 316, 320, 185 Atl. 75, we applied the rule in a case where the defendant under denials of the facts alleged in the complaint, claimed that it was not liable both because the driver of a motor vehicle it owned, involved in the accident, was not guilty of conduct which entitled the plaintiff to recover and because the driver was not at the time acting within the scope of his agency for it. The grounds of defense in that case were exceptionally distinct and obvious; our present conclusion is, however, that it will conduce to a better procedure if the rule concerning the effect of a general verdict be not applied as regards any grounds claimed to defeat the plaintiff's cause of action which may be proved under simple denials of the facts alleged in the complaint.

In this case the complaint alleged that the plaintiff was engaged by the defendants to negotiate the sale of the lands upon certain terms including a sale price of $19,500, later reduced to $19,000, that the plaintiff secured a purchaser ready, able and willing to buy the lands upon those terms, but that the defendants refused to sell the property. The defendants filed a general denial. While, as the case was tried, the issue of the withdrawal of the offer was determined under the general denial, the claim that the offer had been withdrawn was really matter in avoidance which should have been specially pleaded. To this situation the rule concerning the effect of a general verdict applies. We cannot determine in the light of it upon which of the two claims of the defendants the jury based its verdict. As the jury might have found that

the defendants had never offered the property for sale at the price submitted by the plaintiff, the verdict must stand despite the error committed with reference to the issues presented upon the defendants' claim that the offer had been withdrawn.

There is no error.

In this opinion the other judges concurred.