LAWRENCE TARTORIA *v.* ELIZABETH M. MANKO

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued November 12, 1947—decided February 5, 1948.

*R. William Bohonnon,* with whom, on the brief, was *William F. Geenty,* for the appellant (plaintiff).

*Alfred F. Celentano,* for the appellee (defendant).

ELLS, J. The plaintiff, a real estate broker, brought this action for a commission which he alleged had been earned when he produced a customer ready, willing and able to buy the defendant's real

estate in Branford for the price and upon the terms fixed by the defendant. The trial court rendered judgment for the defendant, and the plaintiff has appealed.

The facts are not in dispute. On or about February 17, 1946, the plaintiff saw a "For Sale" sign on property of the defendant and asked her if she would permit him to act as her agent in selling the premises. She told him that she would not sign a contract with him but that he was authorized to secure a purchaser for $18,000 and if he produced such a customer she would pay him a commission of 5 per cent of the sale price. The plaintiff immediately advertised the property in the New Haven papers and as a result Joseph Guido became interested. Guido and the plaintiff inspected the premises and entered into negotiations with the defendant. She reduced the price to $17,500. At noon on February 26, Guido told the plaintiff that he would buy on the terms fixed by the defendant. The plaintiff immediately conferred with the defendant but did not inform her that Guido had met her terms. Instead, he told her that he thought Guido could be induced to pay $17,500 and that he would come that afternoon between 3 and 3:30 o'clock with Guido or a member of his family for a final discussion and payment of a deposit. This was satisfactory to her and she said that she would not show or sell the property to another but would await the plaintiff's return that afternoon.

Guido was unable to accompany the plaintiff but delegated his son Louis to do so, gave him cash to be used for a deposit and authorized him to buy the property for $17,500 but told him to try first to get it for $17,000. Guido was ready, willing and able to pay $17,500 and was in a position to pay all cash or

give a mortgage for part of the price, at the defendant's election. The plaintiff and Louis did not arrive until 4:30 p.m. In the meantime, other customers, Mr. and Mrs. Sylvia, appeared. The defendant told them that she was expecting a prospective buyer and that she would not talk to them until half past four. When that hour arrived, she began to discuss a sale to them for $17,500, agreed upon terms and accepted a deposit. She did not know that the plaintiff and Louis had arrived at 4:30 o'clock and had been waiting for her in another house located on the premises. They were not able to get in touch with her until shortly after 5 o'clock. When she did not tell them that she had sold the property, Louis offered $17,000, and she replied "Why should I sell for $17,000? I just turned down an offer for $17,-000." The plaintiff then said to Louis, "What do you say, are you willing to pay $17,500?" Louis answered, "Yes, we will pay $17,500," and the defendant made no reply. An inquiry was made as to the amount of the annual tax bill and the defendant produced a bill and handed it to the plaintiff for inspection. Mrs. Sylvia then appeared in the room and both women left. A few minutes later the defendant's son came in and told the plaintiff and Louis that his mother had sold the property to the Sylvias.

The general listing of property with a real estate broker for sale, without special agreement, does not give rise to such mutual obligations as in themselves constitute a contract. Such a listing is an offer by the owner which he may withdraw at any time but which ripens into a contract when the broker meets its terms by producing one who is able, ready and willing to buy on the terms stated or on terms satisfactory to the owner. *Skene* v. *Carayanis,* 103 Conn. 708, 713, 131 A. 497; *Knight Realty Co.* v. *Caserta,*

126 Conn. 162, 165, 10 A. 2d 597. Upon the facts of the present case, the issue is whether the offer had been withdrawn and, if so, whether the withdrawal was made before or after the purchaser was obtained by the plaintiff. The owner, after selling her property to another, not only failed to tell the broker this fact when he arrived with his customer but by her conduct led him to believe that it had not been sold. The matter boils down to this: The defendant had sold her property before she received the offer of the customer meeting her terms, but she led the plaintiff to believe, reasonably, that she had not sold it, whereupon he secured from the customer an offer which met the prescribed terms. By her conduct at that time, the defendant reaffirmed the plaintiff's employment to get her a purchaser on her terms, and this he did. It does not present the ordinary case of a sale by the owner before the broker has produced a customer, but rather one where the owner, after she had sold her property, by her conduct indicated to the broker that she wanted him to persist in his efforts to procure a customer.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiff.

In this opinion the other judges concurred.