ELIZABETH L. CROSS ET AL. *v.* PETER R. HUTTENLOCHER ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued June 9—decision released August 18, 1981

*Kenneth S. Halpern,* for the appellant (plaintiff).

*Edward J. Daly, Jr.,* with whom was *Jesse M. Frankl,* for the appellee (named defendant).

*John F. Scully,* with whom, on the brief, were *Vincent M. DeAngelo* and *Mary L. Beardsley,* for the appellee (defendant David Riege).

PARSKEY, J. This case concerns the nature of a physician's duty to a patient who takes a potentially dangerous prescription drug pursuant to the physician's direction. The plaintiff[1] claims that her blindness was caused by the defendants' negligent administration to her of the drug Atabrine from 1965-1970. Following a general jury verdict and judgment rendered in favor of the defendants, Dr. Peter R. Huttenlocher and Dr. David Riege, the plaintiff appeals.

The following underlying facts are not seriously challenged by the parties. The plaintiff was born on July 2, 1962, and began having seizures some three months later. For the next three years she was under the care of several physicians including Robert Breer, her general pediatrician; David Riege, also a pediatrician; Philip Dodge, a pediatric neurologist; and Peter Huttenlocher, also a pediatric neurologist. Huttenlocher worked under the supervision of Dodge at Massachusetts

---

[1] Both the patient, Elizabeth Lynn Cross, and her father, Albert A. Cross, were plaintiffs in this action. In this opinion, we refer only to Elizabeth Lynn as the plaintiff because her father's only interest in the case is derivative, limited to the expenses he has incurred on her behalf.

General Hospital. The plaintiff was diagnosed by Dodge as having myoclonic seizures and occasional grand mal seizures.

Atabrine treatments began in 1965 at the instance of Dodge. The plaintiff was given an ad lib[2] Atabrine prescription signed by Breer. During 1966 and 1967 she continued to take Atabrine while being examined by Huttenlocher once or twice a year. He notified Riege, who was at that time the plaintiff's local pediatrician, that the plaintiff was to continue to use Atabrine. In 1968 the plaintiff stopped seeing Huttenlocher because of the inconvenience of traveling from her West Hartford home to his office, then in New Haven.

In May, 1969, the plaintiff's mother wrote Huttenlocher requesting a copy of the latest prescriptions of medication that the plaintiff was then receiving in order for her to be admitted into the Hartford Regional Center. His response included a prescription for Atabrine. The plaintiff continued to use Atabrine until 1970, when another neurologist ordered it discontinued. At this point her seizures had worsened and she was going blind. We discuss separately the claims of error against each physician.

### RIEGE

The first claim pursued in the briefs with respect to the defendant Riege concerns the trial court's charge to the jury. The court instructed the jury to disregard the paragraph of the plaintiff's complaint which alleged that Riege was negligent in failing to warn the plaintiff that Atabrine could cause side effects harmful to her vision. The decision to remove this issue from the jury's consider-

---

[2] An ad lib prescription is one which may be refilled as often as desired. See Stedman's Medical Dictionary (23d Ed. 1976).

ation was based upon the court's conclusion that there was no evidence to support the claim that such a failure to warn was a breach of a physician's duty. We agree.

A physician is under a duty to his patient to exercise that degree of care, skill and diligence which physicians in the same general line of practice ordinarily possess and exercise in similar cases. *Katsetos* v. *Nolan,* 170 Conn. 637, 644–45, 368 A.2d 172 (1976). To prevail in a malpractice case the plaintiff must establish through expert testimony both the standard of care and the fact that the defendant's conduct did not measure up to that standard. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 334, 430 A.2d 1 (1980).

In her brief, the only expert evidence relied on by the plaintiff to sustain her burden in this respect consists of the testimony of doctors Huttenlocher and Leon Charash, a physician specializing in pediatric neurology. Neither testified that he was familiar with the standard of care applicable to physicians specializing in general pediatrics. The standard of care to which the defendant Riege, as a general pediatrician, had to conform his conduct was thus never established. The trial court properly took the issue away from the jury.

The plaintiff also maintains that the trial court erred when it instructed the jury to disregard the allegations of negligence which related to the defendant's failure to test[3] the drug prior to pre-

---

[3] The plaintiff, in her brief, claims that the court also took away from the jury the allegation that Riege was negligent in failing to investigate whether Atabrine was suitable for the treatment of the plaintiff's seizures. Contrary to the plaintiff's present stance, the court did not instruct the jury to disregard the failure to investigate claim.

scribing it. We need not consider this issue at length because the record before us reveals neither a relevant request to charge nor an exception to this portion of the charge. Accordingly, we decline to review this claim. *Thomas* v. *Katz,* 171 Conn. 412, 413–14, 370 A.2d 978 (1976); Practice Book § 315; Maltbie, Conn. App. Proc. § 112.

The plaintiff's next claim assails the court's instructions on the meaning of proximate cause and fair preponderance of the evidence. After reviewing the charge as given and the plaintiff's requests to charge relating to proximate cause, we conclude that the charge was correct in law, adapted to the issues and sufficient for the jury's guidance. See *Michaud* v. *Gagne,* 155 Conn. 406, 412, 232 A.2d 326 (1967). The court's instructions included references to concurrent causation, defined proximate cause as an act or failure to act which is a substantial factor in producing a result, and indicated how causation could be established through expert testimony. That the court did not adopt the plaintiff's requests verbatim does not afford a ground for reversal so long as the jury were adequately apprised of the relevant issues. *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977). To the extent that the plaintiff's requests were correct in law, their substance was included in the court's charge. See *Michaud* v. *Gagne,* supra.

The portion of the charge which described the standard of proof was also correct in law. "Fair preponderance of the evidence" was properly defined as "the better evidence, the evidence having the greater weight, the more convincing force in your mind." The court charged that the standard has been satisfied with respect to a fact if all the

evidence considered fairly and impartially evinces a reasonable belief that it is more probable than not that the fact is true. The plaintiff does not directly attack these instructions. Rather she argues that the court's later use of the term "reasonable probability" in connection with compensating the plaintiff for future damages operated to confuse the jury as to the standard of proof. We disagree. Taken in context, the "reasonable probability" language was entirely correct as a guide to estimating future pain, incapacity and physical impairment. No reason appears why the jury would spontaneously substitute "reasonable probability" for the fair preponderance standard carefully described in the charge. The court's instructions included the essence of the plaintiff's requests and, read as a whole, fairly presented the case. See *Kosko* v. *Kohler,* 176 Conn. 383, 390–91, 407 A.2d 1009 (1978).

The plaintiff next claims error in the court's rulings excluding from and admitting into evidence certain portions of medical texts. The plaintiff first challenges the court's denial of her request to introduce several excerpts from medical texts into evidence. Under Connecticut law, if a medical treatise is recognized as authoritative by an expert witness and if it influenced or tended to confirm his opinion, then relevant portions thereof may be admitted into evidence in the exercise of the trial court's discretion. See *Kaplan* v. *Mashkin Freight Lines,* 146 Conn. 327, 334–35, 150 A.2d 602 (1959); *Cervino* v. *Coratti,* 131 Conn. 518, 521–22, 41 A.2d 95 (1945); Tait & LaPlante, Handbook of Connecticut Evidence §§ 7.16f (4), 11.19. This approach differs from that of most other jurisdictions, including the federal rule, in that we allow the material

to be taken into the jury room as a full exhibit. Tait & LaPlante, supra, § 7.16f (4); Tait, "The New Federal Rules of Evidence: A Summary of the Differences Between the Rules and the Connecticut Law of Evidence," 9 Conn. L. Rev. 1, 30–31 (1976). Most other jurisdictions bar such material from the jury room, limiting their use to an oral reading in connection with an expert witness' testimony. See Fed. R. Evid. 803 (18)[4]; annot., 72 A.L.R.2d 931. This limitation seeks to avoid the danger of misunderstanding or misapplication by the jury and ensures that the jurors will not be unduly impressed by the text or use it as a starting point for reaching conclusions untested by expert testimony. Fed. R. Evid. 803 (18), advisory committee note; Weinstein & Berger, Weinstein's Evidence ¶ 803 (18) [02]. The Connecticut rule, on the other hand, has the advantage of allowing the jurors to examine more fully the text of what frequently is a technical and complicated discussion that may be unfathomable to a nonexpert juror who merely heard a single oral recitation. Although the concerns which underlie the federal rule cannot be completely obviated when the materials are allowed in the jury room, the dangers can be min-

---

[4] "Fed. R. Evid. 803. HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL.

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \*

"(18) LEARNED TREATISES.—To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

imized by the judicious exercise of discretion by the trial court in deciding which items ought to be admitted as full exhibits.

Measured against these principles, the trial court's rulings excluding certain medical texts offered by the plaintiff from evidence cannot be disturbed. Essentially, the court declined to admit the texts because of the danger that the jury would be confused or misled by examining the texts unaided by expert testimony.[5] An examination of the excluded material discloses that the court's fears were well-founded.

The medical literature offered by the plaintiff and excluded from evidence by the court suffered from two defects. First, most of the material did not concern side effects from Atabrine specifically. Instead, the material referred to "chloroquine" or

---

[5] *The court expressed its reasons for excluding the material on the record in part as follows:* "I have looked through the offers, and they certainly are beyond the Court's expertise to any degree, and I believe I have stated before that with respect to other similar kinds of materials that were offered, that the Court was concerned that such offers might tend to confuse the jury rather than assist them in deciding the questions that are presented here.

\* \* \* \* \*

"I see the hazard that the jury can misinterpret, can misunderstand. I can see that the jury can be misled when, in fact, the only real purpose of—that is, the stated purpose of the offer—is to support, in the eyes of the jury, the opinion of the witness that the witness has not, through some aberration, arrived at this opinion, but has been supported by other medical research, and that objective can be obtained without the documents being put into evidence and without taking the risk that the jury can be misled and be misdirected.

\* \* \* \* \*

"Much of the information is highly technical and requires the training that the witness has to analyze it, to sift it, to evaluate it and come up with an opinion. Therefore, for those reasons, and bearing in mind the purpose for which the documents are being offered . . . ."

"other antimalarials." Chloroquine is related to Atabrine but is not identical to it. Atabrine is part of a class of drugs known as antimalarials. The trial court did not abuse its discretion by ruling that the pharmacological incongruity between the drugs discussed in the proffered medical literature and Atabrine could confuse or mislead the jury. The second defect, present in some of the proffered literature which did specifically refer to Atabrine, was that permanent visual impairment was not listed as a side effect. Because this defect rendered the texts of dubious relevancy, the trial court did not err when it excluded these materials.

The plaintiff also pursues in her brief a claim that the court abused its discretion when it admitted into evidence as a full defendant's exhibit an excerpt from a medical text.[6] The plaintiff does not question that the text was authoritative, but maintains that the excerpt admitted was ambiguous and could confuse the jury. The excerpt reads in full: "QUINACRINE HYDROCHLORIDE (MEPACRINE, CHINACRIN, ATABRINE, ATEBRIN). This synthetic drug has been used as an antimalarial since 1931. In a very large majority of the many thousands of individuals who have been given this drug there have been no alarming untoward effects. In persons taking the drug a yellow coloration of the skin develops in many, and the urine becomes deep yellow when acidified, although renal function is unimpaired. In some

---

[6] Although the plaintiff now complains that seven such exhibits were erroneously admitted into evidence, only in two instances did the plaintiff properly raise the claim at trial, thereby preserving her right to have the matter reviewed on appeal. See Practice Book §§ 288, 3063. Of these two claims, only one, concerning the defendant Huttenlocher's exhibit 13, has been briefed. The other is deemed abandoned. *Manley* v. *Pfeiffer*, 176 Conn. 540, 541, 409 A.2d 1009 (1979).

instances, in addition to coloration of the skin and mucous membranes, there are nausea, vomiting, cramps, diarrhea, vertigo, and pains in the muscles and joints. Enormous doses may prove fatal. The concurrent administration of quinacrine and prima- quine, an 8-aminoquinoline antimalarial, is likely to produce methemoglobinemia and hemolysis and is contraindicated (Goodman and Gilman). This drug does not produce retinopathy." The particular ambiguity relied upon is that the words "this drug" in the last sentence could refer either to quinacrine[7] alone (quinacrine is another name for Atabrine) or to quinacrine and primaquine. When the excerpt is interpreted according to principles of standard grammatical usage, however, no such ambiguity appears. The use of the singular demonstrative adjective "this" and the singular noun "drug" indi- cates that the antecedent is not "the concurrent administration of quinacrine and primaquine." The only drug to which the last sentence reasonably could be interpreted to refer is quinacrine. The court did not abuse its discretion in allowing the excerpt into evidence as a full exhibit.

### HUTTENLOCHER

Although the plaintiff briefs several claims of error in her case against Huttenlocher, Hutten- locher responds that we need not review each claim on the merits because of the general verdict rule. The scope and application of the general verdict rule were thoroughly discussed in *Knight Realty Co.* v. *Caserta,* 126 Conn. 162, 166–69, 10 A.2d 597 (1939), and need not be repeated here. In the pres- ent case Huttenlocher filed both a denial of the plaintiff's allegations and a special defense based

---

[7] According to one of the plaintiff's experts, quinacrine and mepa- crine are synonyms for atabrine.

upon the statute of limitations.[8] Because the jury rendered a general verdict, we cannot determine whether the case against Huttenlocher was resolved on the basis of the plaintiff's failure to prove her case or the defendant's successful assertion of his special defense. To the extent that the statute of limitations could have barred the plaintiff's claim, the verdict must stand. *Knight Realty Co.* v. *Caserta,* supra, 167–69.

One aspect of the plaintiff's case, however, was unaffected by the statute of limitations. The plaintiff alleged and claimed to have proved that Huttenlocher was negligent in that he failed to warn the plaintiff and her parents of the harmful effects to vision that may result from taking the drug Atabrine. Because the negligent failure to warn is a continuing course of conduct, the statute of limitations does not begin to run until the course of conduct is completed. *Prokolkin* v. *General Motors Corporation,* 170 Conn. 289, 298, 365 A.2d 1180 (1976); *Handler* v. *Remington Arms Co.,* 144 Conn. 316, 321, 130 A.2d 793 (1957).

The defendant in his brief does not point to any evidence from which the jury could have concluded that this continuing course of conduct terminated more than three years before suit was brought.

---

[8] "[General Statutes] Sec. 52-584. LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

Therefore, the statute of limitations could not have supplied an alternative basis upon which to support a jury verdict with respect to the failure to warn. The general verdict rule, then, does not render harmless any error committed by the trial court concerning the failure to warn.

The plaintiff claims that the trial court erred in instructing the jury to disregard the issue of Huttenlocher's allegedly negligent failure to warn the plaintiff of the potential harmful effects of Atabrine. To review this claim we must determine whether there was evidence reasonably supporting the allegation. If there was, the trial court committed error when it took this issue from the jury. See Maltbie, Conn. App. Proc. § 85.

When the evidence adduced at trial is viewed in the light most favorable to the plaintiff, it is apparent that the specification of negligence relating to the failure to warn should have gone to the jury. One of the plaintiff's witnesses, Leon Charash, testified that he was a pediatric neurologist; that he was familiar with the standard of care for pediatric neurologists in Connecticut with respect to treating myoclonic and infantile spasms; that there was a standard of care in the prescription and administration of drugs in the field of pediatric neurology which was included in the treatment of myoclonic seizures and infantile spasms; that the standard with respect to administering Atabrine in 1965 included advising the family what the potential side effects were because the drug was an experimental one for the treatment of seizures; and that one such side effect was damage to the eyes. He also testified that the use of the drug during 1965-1970 under the circumstances of the plaintiff's case rep-

resented a serious departure from the proper standards of good medical practice in part because the doctors who administered the drug did not indicate to the family the risks intrinsic in the use of the drug.

This testimony, if credited by the jury, could have been sufficient to make out a case of negligent failure to warn against Huttenlocher. While there also was evidence suggesting that untoward visual side effects from Atabrine were virtually unknown during 1965-1970 and that Huttenlocher's involvement in the case was only peripheral in any event, the jury should have been allowed to weigh and to sift all the evidence in the case relating to the failure to warn. Because reasonable minds could differ as to whether the plaintiff proved her allegation of a negligent failure to warn by a preponderance of the evidence, the issue should have been left to the jury. The trial court's instruction to the jury telling them to disregard this specification of negligence was, therefore, erroneous.

There is error only as to the judgment in favor of the defendant Huttenlocher, the judgment as to him only is set aside and a new trial ordered.

In this opinion the other judges concurred.