CLARENCE O. GODWIN *v.* DANBURY EYE
PHYSICIANS AND SURGEONS,
P.C., ET AL.
(SC 16175)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

Argued March 22—officially released August 8, 2000

*Edward F. Hennessey*, with whom was *David Thomas Ryan*, for the appellant (plaintiff).

*Augustus R. Southworth III*, with whom was *Matthew R. Peterson*, for the appellee (defendant Vincent S. Reppucci).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Clarence O. Godwin, brought this action against the defendants, Danbury Eye Physicians and Surgeons, P.C., and a physician employed by it, Vincent S. Reppucci, alleging, in four counts: (1) assault and battery; (2) lack of informed consent; (3) medical malpractice; and (4) res ipsa loquitur. The plaintiff's allegations arose out of laser eye treatment administered by Reppucci.[1] The plaintiff appeals from the judgment of the trial court rendered after a jury verdict for the defendant. The plaintiff claims that the trial court improperly: (1) directed a verdict for the defendant with respect to the assault and battery claim; (2) refused to instruct the jury on the doctrine of res ipsa loquitur; and (3) improperly instructed the jury regarding the doctrine of informed consent. We disagree with the plaintiff's first two claims and agree with his third claim. Accordingly, we reverse the judgment of the trial court and order a new trial limited to the plaintiff's claim of lack of informed consent.[2]

The jury reasonably could have found the following facts. The plaintiff was referred to the defendant, an

---

[1] Prior to trial, the plaintiff withdrew the action against the named defendant, Danbury Eye Physicians and Surgeons, P.C., leaving Reppucci as the sole defendant. We refer in this opinion to Reppucci as the defendant.

[2] In light of our resolution of these issues, we need not reach the remaining issues briefed by the parties, which are not likely to arise again in the new trial. The plaintiff's remaining claims are that the trial court improperly allowed the admission of hearsay evidence of certain experts' opinions, improperly limited the cross-examination of the defendant's expert witness and incorrectly established the witness fee for the defendant's expert.

ophthalmologist and retina vitreous specialist, who diagnosed a macular degeneration of the left eye, an age-related condition that impairs one's vision. The defendant recommended laser photocoagulation, a laser treatment designed to prevent the degeneration. The defendant explained the risks, benefits and alternatives of the treatment to the plaintiff. In particular, the defendant explained that the laser treatment would require the plaintiff to sit in front of a laser machine so that a laser could be directed into his eye. In order to direct the laser accurately and immobilize the eye, the retrobulbar cavity, the area behind the eyeball, would be injected with anesthesia, a procedure known as "retrobulbar anesthesia." The defendant's explanation of the anesthesia procedure included the fact that a significant loss of vision could result. The plaintiff gave his written consent to the procedure, which included a form entitled, "Permission for Operation and/or Procedure and Anesthesia."

On April 10, 1992, the defendant administered the retrobulbar anesthesia. Prior to the procedure, the plaintiff inquired into the use of the retrobulbar needle and was told that it would be used to anesthetize the eye. After the plaintiff's eye was anesthetized, the defendant performed the laser treatment (first procedure). After this first procedure, the plaintiff's condition worsened and, as a result, the defendant recommended a second treatment. The plaintiff orally consented to this treatment and understood that it would be the same as the first procedure, including the administration of the retrobulbar anesthesia. The defendant testified that the plaintiff had signed a written consent form, however, that form was not in the medical file at the time of trial.

On April 28, 1992, the plaintiff came in for the second treatment (second procedure). During the administration of the retrobulbar anesthesia, the needle perforated

the globe of the plaintiff's eyeball. As a result, the plaintiff's vision was damaged permanently.

The plaintiff thereafter brought this action. At the conclusion of the plaintiff's case, the trial court granted a directed verdict in favor of the defendant on the first count of the plaintiff's complaint, which alleged assault and battery. After the conclusion of the evidence by both parties, the trial court instructed the jury regarding the second and third counts of the complaint, which alleged lack of informed consent and medical malpractice, respectively. The trial court, however, refused to instruct the jury on the doctrine of res ipsa loquitur, which was alleged in the fourth count of the complaint. The jury returned a general verdict in the defendant's favor. The plaintiff moved to set aside the verdict and for a new trial. The trial court denied this motion and rendered judgment for the defendant. The plaintiff appealed from the judgment of the trial court to the Appellate Court. Thereafter, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

## I

The plaintiff first contends that the trial court improperly directed a verdict in favor of the defendant on the plaintiff's claim for assault and battery. In particular, the plaintiff claims that the defendant failed to obtain consent for the retrobulbar anesthesia that was administered during the second procedure. We disagree.

"Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion." (Citation omitted.) *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982); *Sestito* v. *Groton,* 178 Conn. 520, 522, 423 A.2d 165 (1979). "In reviewing the trial court's decision to direct a verdict in favor of a defen-

dant we must consider the evidence in the light most favorable to the plaintiff." *Petyan* v. *Ellis*, supra, 244.

Considering the evidence in the light most favorable to the plaintiff, the following facts are relevant to this issue. In April, 1992, after examining the plaintiff, the defendant recommended laser photocoagulation treatment. After the defendant explained some of the possible risks and side effects of the procedure, the plaintiff signed a written consent form entitled, "Permission For Operation and/or Procedure and Anesthesia."

When the plaintiff returned on April 10, 1992, for the first procedure, the defendant explained that, in order to prevent the eye from moving and thus maintain the accuracy of the laser, he needed to perform a procedure in which he would insert a needle into the area that surrounds the eyeball and inject anesthesia into that tissue. The defendant then administered the retrobulbar anesthesia and performed the initial laser treatment. After the plaintiff's condition worsened, however, the defendant recommended that the plaintiff undergo the second procedure.

The defendant testified that he obtained a second written consent form from the plaintiff for the second procedure, but could not locate it in his medical records at the time of trial. The plaintiff testified that he remembered consenting orally to the second procedure. He also testified that he knew that the second procedure, including the administration of the retrobulbar anesthesia, would be the same as the first procedure.

We have long recognized the principle that "[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent, commits an assault, for which he is liable in damages." (Internal quotation marks omitted.) *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282,

288–89, 465 A.2d 294 (1983). In *Logan*, this court established that a patient can recover for assault and battery when the physician (1) fails to obtain any consent to the particular treatment, (2) performs a different procedure from the one for which consent has been given, or (3) realizes that the patient does not understand what the procedure entails. Id., 289.[3]

The evidence established that the defendant, at a minimum, had obtained oral consent for the second procedure. The plaintiff admitted that he had given verbal consent for the second procedure and understood that the second procedure would follow the same process as the first procedure, including the administration of the retrobulbar anesthesia. Therefore, there was no basis upon which a jury reasonably could have found that the defendant had failed to obtain any consent for the second procedure.

We find no merit to the plaintiff's contention that the defendant needed to obtain a separate consent for the retrobulbar anesthesia. The plaintiff hinges this argument on the defendant's testimony that he did not have the plaintiff consent separately and specifically to the *retrobulbar anesthesia*. Testimony from the defendant and the expert witnesses for both the defendant and the plaintiff established, however, that it was not common practice for ophthalmologists to seek a separate consent for retrobulbar anesthesia when it was used in conjunction with the laser procedure. Furthermore, it is undisputed that the plaintiff already had undergone retrobulbar anesthesia when he consented to the second procedure, and that he had been told that the second procedure would follow the same procedure as the first, including the retrobulbar anesthesia.

---

[3] The consent necessary to preclude a claim for assault and battery is different from the consent at issue on a claim of lack of informed consent, where the issue is whether a sufficient disclosure was made. *Logan* v. *Greewich Hospital Assn.*, supra, 191 Conn. 289.

We also reject the plaintiff's claim that the defendant performed a different procedure than the one to which the plaintiff consented. He argues that, even if he consented to the retrobulbar anesthesia performed in the first procedure, he did not consent to the perforation of his eye during the second procedure. The plaintiff's verbal consent to the second procedure, however, was not negated by the fact that the procedure itself was performed unsuccessfully or that a complication occurred. "The consent must be to the actor's conduct or to substantially the same conduct, rather than to the invasion that results from it." See 4 Restatement (Second), Torts § 892A, comment (e), p. 367 (1979). Thus, the focus of the consent is on the conduct or procedure to be performed, not its consequences, as the plaintiff suggests. See id., § 892A, comments (c) and (e), pp. 365–67; id., § 892B, comment (c), p. 371. Although the plaintiff did not expect the consequence of the perforation of his eye, he did give adequate consent to the administration of the retrobulbar anesthesia that led to his injury.

Finally, there was no evidence that the defendant realized that the plaintiff did not understand what the second procedure entailed. The defendant testified, and the plaintiff confirmed, that during the first procedure, he had explained the laser treatment and the need for administering the retrobulbar anesthesia. Further, the plaintiff testified that when the defendant recommended the second procedure he understood that it would be the same as the first procedure, including the administration of the anesthesia. Having already undergone the administration of the retrobulbar anesthesia during the first procedure, the plaintiff did not raise any new questions before the second procedure. Therefore, the plaintiff failed to show that the defendant realized that the plaintiff did not understand what the second procedure entailed.

Because the jury could not reasonably and logically have reached any other conclusion concerning the plaintiff's claim for assault and battery, the trial court properly directed a verdict for the defendant on that claim.

## II

The plaintiff next claims that the trial court improperly refused to charge the jury on the doctrine of res ipsa loquitur in connection with the third count of the complaint alleging medical malpractice. We disagree.

"Whether the doctrine of res ipsa loquitur applies in a particular case is a question of law over which our review is plenary. *Giles* v. *New Haven*, 228 Conn. 441, 447, 636 A.2d 1335 (1994). In this regard, we note that a trial court should instruct the jury in accordance with a party's request to charge if the proposed instructions are reasonably supported by the evidence. *Goodmaster* v. *Houser*, 225 Conn. 637, 648, 625 A.2d 1366 (1993). We therefore review the evidence presented at trial in the light most favorable to supporting the plaintiff's proposed charge." (Internal quotation marks omitted.) *Barretta* v. *Otis Elevator Co.*, 242 Conn. 169, 171–72, 698 A.2d 810 (1997).

Reviewing the evidence in the light most favorable to the plaintiff, the jury reasonably could have relied upon the following facts. As part of the first procedure, the defendant performed retrobulbar anesthesia by injecting the area behind the eyeball with anesthesia in order to immobilize the eye for laser treatment. During the administration of the retrobulbar anesthesia for the second procedure, the defendant perforated the plaintiff's eyeball with the retrobulbar needle. The defendant, upon noticing that there was blood in the plaintiff's eye, explained that in all likelihood there was a perforation. He advised that they abort the laser treatment and monitor the plaintiff's condition. The follow-

ing day, the defendant performed a vitrectomy to remove the blood and to prevent infection of the plaintiff's eye. As a result of the perforation, the plaintiff's vision was damaged permanently.

"The doctrine of res ipsa loquitur, literally the thing speaks for itself, permits a jury to infer negligence when no direct evidence of negligence has been introduced. . . . The doctrine of res ipsa loquitur applies only when two prerequisites are satisfied. First, the situation, condition or apparatus causing the injury must be such that in the ordinary course of events no injury would have occurred unless someone had been negligent. Second, at the time of the injury, both inspection and operation must have been in the control of the party charged with neglect. *Giles* v. *New Haven*, supra, 228 Conn. 446. When both of these prerequisites are satisfied, a fact finder properly may conclude that it is more likely than not that the injury in question was caused by the defendant's negligence." (Citations omitted; internal quotation marks omitted.) *Barretta* v. *Otis Elevator Co.*, supra, 242 Conn. 173–74.

On the basis of the undisputed expert testimony elicited during trial, we conclude that the plaintiff's injury could have occurred in the absence of negligence. Experts for both the plaintiff and the defendant testified that the perforation of the plaintiff's eyeball did not mean necessarily that the defendant was negligent in the administration of the retrobulbar anesthesia. Todd Katz, an eye surgeon who testified as an expert medical witness for the plaintiff, testified that the perforation of the eyeball is an accepted risk of the retrobulbar anesthesia procedure and that the defendant's perforation of the plaintiff's eyeball did not mean that he had been negligent. Similarly, Jerry Neuwirth, also an eye surgeon, testified as a medical expert for the defendant that any time retrobulbar injection is performed, there is a risk of perforation of the eyeball. He opined that the

defendant was not negligent in perforating the plaintiff's eyeball. On cross-examination, the defendant himself testified that the risk of a perforation during the retrobulbar anesthesia procedure varies from one in 2500 to one in 10,000. From all of the expert testimony presented at trial, we are not persuaded that, in the ordinary course of events, the eyeball perforation would not have occurred but for the negligence of the defendant. Therefore, one of the necessary prerequisites for application of the doctrine of res ipsa loquitur was not satisfied.

The plaintiff, relying on cases from jurisdictions other than Connecticut, contends that res ipsa loquitur is applicable to medical malpractice cases where common knowledge suggests that the result that occurred would not have happened in the absence of the physician's negligence. Those cases, however, are readily distinguishable from the present case, in which experts for both parties testified that the plaintiff's injury could have occurred without any negligence on the part of the defendant.[4]

### III

The plaintiff's final claim is that the trial court improperly instructed the jury that the doctrine of informed consent did not apply unless the plaintiff proved through expert testimony that the medical community's standard of care required an ophthalmologist to obtain the patient's consent before performing retrobulbar anesthesia. We agree.

The following additional facts are relevant to this issue. At the conclusion of the plaintiff's case, the defen-

[4] Because our conclusion regarding res ipsa loquitur is dispositive of the issue, we do not need to reach the plaintiff's claim that he was entitled to a res ipsa loquitur instruction based specifically on the rarity of occurrence of the perforation of the eyeball during the administration of retrobulbar anesthesia.

dant made a motion for a directed verdict on the second count of the complaint, which alleged lack of informed consent. The trial court reserved its judgment on this motion. At the close of all of the evidence, the defendant renewed his motion for a directed verdict and the trial court again reserved judgment.

The trial court later told the parties that it intended to instruct the jury that the plaintiff must show by expert testimony that the defendant had a duty to inform as required by *Mason* v. *Walsh*, 26 Conn. App. 225, 230, 600 A.2d 326 (1991), cert. denied, 221 Conn. 909, 602 A.2d 9 (1992). The trial court subsequently instructed the jurors as follows: *"The plaintiff must first establish a duty to inform. This must be shown through expert testimony. The plaintiff must prove that the customary standard of care of physicians in the same practice as that of the defendant, in this case, ophthalmology with a . . . vitriol retinal specialty, was to obtain the plaintiff's consent prior to performing any operation or procedure. Therefore, if and only if you find that the plaintiff . . . has proven a duty to inform through expert testimony, will you determine the degree or extent of the disclosure necessary to satisfy the duty in accordance with the following standard . . . .* [T]his is the standard that must be followed: a physician is obligated to provide a patient with that information which a reasonable patient would have found material about whether or not to embark upon a contemplated course of treatment, in this case, laser surgery with retrobulbar anesthesia. This is often called a lay standard." (Emphasis added.) The plaintiff took exception to the trial court's charge to the jury on the need for expert testimony to establish a lack of informed consent.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that

a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995)." (Internal quotation marks omitted.) *State* v. *Albert*, 252 Conn. 795, 815–16, 750 A.2d 1037 (2000).

We conclude that although the trial court properly instructed jurors on the duty to provide informed consent, it improperly instructed jurors about the evidence necessary to establish the duty to inform. In *Logan* v. *Greenwich Hospital Assn.*, supra, 191 Conn. 289, this court established the standard by which a physician necessarily obtains informed consent from a patient. The court rejected the traditional standard, which was "one set by the medical profession in terms of customary medical practice in the community." Id. Like other courts and legislatures, the court was concerned about "[t]he incongruity of making the medical profession the sole arbiter of what information was necessary for an informed decision to be made by a patient concerning his own physical well-being . . . ." Id., 290. Favoring a lay standard, we require a physician "to provide the patient with the information which a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy." Id., 292–93.

In this case, the trial court properly instructed jurors that the defendant was required to follow a lay standard in providing informed consent to the plaintiff. Neverthe-

less, it improperly instructed the jury that the plaintiff was required to establish through expert testimony that the defendant had a duty to inform. The trial court improperly relied on *Mason* v. *Walsh*, supra, 26 Conn. App. 230, in giving this instruction. In *Mason*, the Appellate Court stated: "[i]n order to establish the existence of a duty to inform, the plaintiff must show through expert testimony that 'the customary standard of care of physicians in the same practice as that of the defendant doctor was to obtain the patient's consent prior to performing any operation.' *Shenefield* v. *Greenwich Hospital Assn.*, [10 Conn. App. 239, 248–49, 522 A.2d 829 (1987)]. Once the existence of the duty to inform has been established, the degree or extent of disclosure necessary to satisfy the duty must be proven in accordance with the lay standard. *Logan* v. *Greenwich Hospital Assn.*, [supra, 191 Conn. 292]." *Mason* v. *Walsh*, supra, 230.

The Appellate Court's decision in *Mason*, however, is distinguishable from the facts of this case. In *Mason*, the plaintiff was treated by three physicians and the issue was which of the three, a urologist or one of the two anesthesiologists, had a duty of obtaining informed consent for an anesthesia procedure. Id., 230–31. After making the general statement quoted above, the Appellate Court clarified the reason why expert testimony concerning the duty to inform was required in that case. "Where, as here, a surgeon engages one or more specialists to perform a portion of a procedure, the issue as to who has the duty to obtain the patient's consent to that portion of the procedure to be performed by the specialist arises. It was incumbent upon the plaintiff to establish by expert testimony *which of the physicians, if any*, owed him the duty of disclosing sufficient facts to permit him to exercise an informed consent to the use of general anesthesia." (Emphasis added.) Id., 230. *Mason* does not apply to the facts of

this case, in which the plaintiff was treated by only one physician. In a case where only one physician treats the patient, it is not necessary to establish through expert testimony that the physician had a duty to inform the patient prior to a surgical procedure. Therefore, the trial court improperly instructed the jury regarding the duty to obtain informed consent.

The improper instruction clearly was harmful to the plaintiff because it directly affected the jury's verdict. *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). The plaintiff presented no expert testimony about the duty to inform and the jury therefore was obliged to return a defendant's verdict on the second count of the plaintiff's complaint.

The judgment is reversed and the case is remanded for a new trial on the second count of the plaintiff's complaint alleging lack of informed consent.

In this opinion the other justices concurred.