******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LUIS OCASIO *v.* VERDURA CONSTRUCTION, LLC, ET AL.
## (AC 44100)

Bright, C. J., and Elgo and Flynn, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant landlord for injuries he allegedly sustained as a result of the defendant's negligence in failing to maintain a porch railing on the premises leased by the plaintiff. One winter morning, the plaintiff fell and broke his leg when he exited his apartment building while sleet and/or freezing rain were falling. The plaintiff claimed that his fall was due to a defective railing that ran along the stairs leading up to the building. He alleged that the railing gave way when he grabbed onto it, which caused him to lose his balance and fall down the stairs. The defendant asserted the ongoing storm doctrine as a special defense, claiming that it did not have a duty to remove any ice from the property during a storm. The plaintiff argued that the doctrine was not applicable because the theory of his case, as presented to the jury, was that his fall was due to the defective railing, not to the presence of ice on the porch. Over the plaintiff's objection, the trial court instructed the jury that if it determined that the ice on the porch and stairs was the proximate cause of the plaintiff's fall and subsequent injuries, it had to apply the ongoing storm doctrine. The trial court also provided the jury with a set of interrogatories. The first two questions asked the jury whether it found that there was an ongoing storm at the time of the incident and, if so, whether the defendant had proved that the icy condition from such storm was the proximate cause of the fall and damages sustained by the plaintiff. In the event that its responses to those questions were in the affirmative, the interrogatories instructed the jury to skip the remaining questions and to return a verdict in favor of the defendant. The jury answered the first two questions in the affirmative and, in accordance with the instructions, returned a defendant's verdict. Thereafter, the trial court denied the plaintiff's motion to set aside the verdict, and the plaintiff appealed to this court. *Held*:

1. The trial court's inclusion of the ongoing storm doctrine in the jury instructions and interrogatories was in error because the doctrine was inapplicable and irrelevant to the plaintiff's claims: the plaintiff alleged that his fall was due to the defective railing, not to the presence of snow and ice on the porch; moreover, the plaintiff never claimed that the defendant breached its duty of care by failing to remove ice and snow from the porch and stairs, and, therefore, the liability issue that the jury had to resolve was whether the plaintiff's fall was caused by the defective railing, the accumulated snow and ice, or the plaintiff's own carelessness; furthermore, even though the defendant had asserted the ongoing storm doctrine as a special defense, an instruction on it could not reasonably have been supported by the evidence.

2. The trial court's erroneous instruction and interrogatories regarding the ongoing storm doctrine were harmful: the trial court likely misled and confused the jury by instructing it on a doctrine that was irrelevant to the case, and such confusion was compounded by the court's decision to have the jury answer questions about the ongoing storm doctrine first and by its instruction to the jury that it was not to answer any additional interrogatories and was to return a defendant's verdict if it determined that the ongoing storm was the proximate cause of the plaintiff's injuries; moreover, the trial court's actual instruction on the ongoing storm doctrine likely further confused and misled the jury because it was an incorrect statement of the law, as it told the jury that the existence of an ongoing storm impacted its causation analysis instead of properly stating that the doctrine relates solely to duty, which was not at issue in this case; furthermore, the trial court's repeated reference in the charge to "the" proximate cause and its suggestion that the jury had to find either the railing or the ongoing storm to be the proximate cause of the plaintiff's injury was incorrect, as it ignored the fact that

the injury could have had more than one proximate cause; additionally, the instruction also was likely misleading, as it suggested to the jury that it had to return a verdict for the defendant if it concluded that the plaintiff's fall was caused by the ongoing storm even if it also concluded that the defective railing contributed to the fall.

3. The defendant could not prevail on its alternative grounds for affirmance as they did not undermine this court's conclusion that the instructional error was harmful or that reversal was required: contrary to the defendant's claim, the plaintiff clearly introduced evidence that the railing was defective; moreover, the plaintiff was not required to introduce expert testimony as to the standard of care for the railing because that issue was a matter of common knowledge; furthermore, the plaintiff introduced sufficient evidence for the jury to conclude that the defendant had constructive notice of the defective railing.

(*One judge concurring in part and dissenting in part*)

Argued January 31—officially released September 13, 2022

*Procedural History*

Action to recover damages for the defendants' alleged negligence, brought to the Superior Court in the judicial district of Waterbury, where the plaintiff withdrew the action as to the defendant Verdura Building, LLC; thereafter, the matter was tried to the jury before *Brazzel-Massaro, J.*; verdict for the named defendant; subsequently, the court, *Brazzel-Massaro, J.*, denied the plaintiff's motion to set aside the verdict and rendered judgment in favor of the named defendant, and the plaintiff appealed to this court. *Reversed*; *new trial.*

*James J. Healy*, with whom, on the brief, was *Brian M. Flood*, for the appellant (plaintiff).

*Miles N. Esty*, for the appellee (named defendant).

*Opinion*

BRIGHT, C. J. The plaintiff, Luis Ocasio, appeals from the judgment of the trial court rendered after a jury verdict in favor of the defendant Verdura Construction, LLC.[1] On appeal, the plaintiff claims that (1) the court erred when it instructed the jury and provided it with interrogatories to answer regarding the ongoing storm doctrine and (2) such error was harmful because it likely confused and misled the jury as to the relevant law. We agree and, accordingly, reverse the judgment of the trial court.[2]

The following facts, as to which the plaintiff presented evidence to the jury, and procedural history are relevant to our resolution of this appeal. The plaintiff is a tenant in an apartment building in Waterbury that is owned and controlled by the defendant. At the time of the events underlying this case, railings ran along both sides of the stairs that led up to the building. According to the plaintiff, one of those railings was missing two screws and was rotted where it attached to the building.

On the morning of February 7, 2017, the plaintiff left his apartment to take out the garbage. At the time, sleet and/or freezing rain was falling, which caused ice and snow to accumulate on the building's porch and stairs. Despite the weather, the plaintiff walked over to the stairs while carrying the garbage bag and, once at the top of the stairs, grabbed the allegedly defective railing. According to the plaintiff, the railing then moved and gave way, causing him to lose his balance and fall down the stairs. The fall broke the plaintiff's leg.

On September 28, 2017, the plaintiff filed a complaint against the defendant alleging negligence. He specifically alleged that "[his] fall was caused by the negligence of the defendant . . . its agents, servants and/or other employees in one or more of the following ways:

"a) they failed to properly maintain the porch and its railings;

"b) they failed to properly inspect the porch and its railings;

"c) they knew or should have known of the unstable and defective condition of the railing, yet took no steps to fix the condition;

"d) they allowed the unstable and defective condition of the railing to exist for an unreasonable period of time;

"e) they failed to adequately train their agents to inspect and maintain the porch and its railings;

"f) they failed to warn the plaintiff that the railing was unstable and defective;

"g) they failed to enact and/or follow adequate procedures to ensure the porch and its railings were properly

inspected and maintained;

"h) they knew or should have known that people would be using the porch and its railings, yet failed to inspect and maintain the porch and its railings; and/or

"i) they failed to erect signs, barriers or otherwise isolate the icy area of the porch and its railings."

On February 23, 2018, the defendant filed an answer denying the plaintiff's allegations and asserting as a special defense that the "[p]laintiff's injuries and damages, if any, were caused by his own contributory negligence . . . ." Prior to trial, the defendant notified the plaintiff that it also intended to assert the ongoing storm doctrine[3] as a special defense and would request that the court take judicial notice of the doctrine. The plaintiff filed an objection to that request, arguing that the ongoing storm doctrine was inapplicable to the case because the plaintiff had alleged that a defective railing, and not "the accumulation of freezing rain, water and ice," caused his fall.

A jury trial was held on July 30, July 31 and August 1, 2019. During opening statements, the plaintiff's counsel set forth the plaintiff's theory of the case. Specifically, the plaintiff's counsel contended that the plaintiff's fall was caused by the defective railing and not by the ice and snow. The plaintiff's counsel further stated that, in the moments preceding the plaintiff's fall, he "realized that it was freezing rain" and "saw water and ice on the porch" but that he had "no problem walking on the porch," despite those wintery conditions. The defendant's counsel, on the other hand, contended that the evidence would show that the plaintiff's fall had been caused by the ice and snow on the porch and not by the defective railing.

At trial, the plaintiff testified about his fall: "It was going to be 10:30 in the morning. I was going out to take the garbage out. I went down the steps from my apartment. I opened the outside door. Then I started to see that there was frozen water—sleet coming down. I took a look at the porch and the porch is full of sleet—frozen water. I walked to the handle. I had no problem. I had the bag of garbage. I held on to the rail. When I leaned on the railing, the railing moved towards the outside. I dropped the garbage bag. I grabbed on—I was holding on to the rail. I wanted to pull the railing and I lost my balance. That's when I fell." The plaintiff adamantly denied that any slippery conditions on the porch and/or stairs had caused his fall.

After the plaintiff's direct examination, the court granted the defendant's request to use the ongoing storm doctrine as a special defense and informed the parties that it would charge the jury on the doctrine. According to the court, the plaintiff's testimony about ice and snow sufficiently implicated the ongoing storm doctrine and, thus, it was relevant to the case.

The defendant's counsel then began his cross-examination of the plaintiff. During that cross-examination, the plaintiff admitted that freezing rain was falling on the morning of his accident but continued to profess that the defective railing, not the weather, had caused his fall.

After the first day of trial concluded, the plaintiff filed a request for leave to file an amended complaint in order to conform his complaint to the evidence introduced at trial. The plaintiff specifically sought to remove paragraph 7 (i) from the complaint, which alleged that the defendant had been negligent in "fail[ing] to erect signs, barriers or otherwise isolate the icy area of the porch and its railings."

The court addressed the plaintiff's request to amend his complaint at the start of the second day of trial. Initially, the defendant had no objection to removing paragraph 7 (i) from the complaint. The court then asked the parties if so amending the complaint would eliminate the ongoing storm doctrine from the case, to which the plaintiff's counsel responded, "I believe it does." The defendant's counsel agreed that removing paragraph 7 (i) would eliminate the ongoing storm doctrine as a special defense but stated that the defendant would still request a jury charge on the doctrine because it believed that the jury needed such an instruction to help it determine the cause of the plaintiff's fall. The plaintiff's counsel then reiterated his argument that the ongoing storm doctrine was irrelevant because "[t]he bottom line is this is a defective railing case. There is no allegation about the issue of snow and ice being the cause of the fall."

Thereafter, the defendant's counsel argued that the ongoing storm doctrine was relevant because evidence of ice and snow had been introduced by the parties. The plaintiff's counsel renewed his objection to the jury being instructed on the ongoing storm doctrine, again arguing that the doctrine was inapplicable and that instructing the jury on it would prejudice the plaintiff's case. The defendant's counsel then informed the court that if it did not allow the defendant to rely on the ongoing storm doctrine, either by way of judicial notice or a jury instruction, the defendant would withdraw its nonobjection to the plaintiff's request to amend. At that point, the plaintiff's counsel argued that amending the complaint to remove the reference to the defendant's failure "to erect signs, barriers or otherwise isolate" the icy area was proper because there was no evidence, and there would be no evidence, on that issue. The court decided to hear the rest of the testimony before ruling on the plaintiff's request to amend.

The defendant's counsel then resumed his cross-examination of the plaintiff. The plaintiff continued to testify that the defective railing, not the ice or sleet,

had caused his fall. In response, the defendant's counsel introduced into evidence several medical records that showed that, in the days and weeks after his fall, the plaintiff repeatedly had told his medical providers that he fell after slipping on ice. The plaintiff claimed those records were incorrect. The defendant's counsel then introduced into evidence an excerpt from the plaintiff's deposition, wherein the plaintiff described the fall as follows: "So when I was going to throw out the garbage, I realized there was freezing rain falling. So that's when I was holding on to the [railing] and had the bag in my hands. So when I was holding on to the [railing] I slipped. When I slipped, I dropped the garbage." The plaintiff also claimed that he had not said that at his deposition. Shortly after that exchange, the cross-examination concluded and the parties rested.

Thereafter, the court held a charging conference, which began with a conversation about whether questions regarding the ongoing storm doctrine should be included in the jury interrogatories. The plaintiff's counsel objected to including any such questions in the interrogatories, but the court overruled the objection. The court then proposed that the ongoing storm doctrine be the first topic the jury addressed in the interrogatories, to which the plaintiff's counsel again objected, arguing that "[t]he ongoing storm [doctrine] has nothing to do with [the case]. The case is whether the rail . . . was defective and caused the injury. . . . [G]oing into . . . [the] ongoing storm [doctrine] is inappropriate and . . . it's going to confuse the jury." The plaintiff's counsel also argued that the evidence in the case about ice and snow could go to the cause of the plaintiff's fall but that instructing the jury about the ongoing storm doctrine on the basis of that evidence alone was prejudicial. The court overruled the plaintiff's objection and ruled that the first two interrogatories the jury would answer would be about the ongoing storm doctrine.

Thereafter, the court denied the plaintiff's request to amend his complaint, concluding that sufficient evidence had been introduced regarding paragraph 7 (i). The court then went over each of the proposed jury instructions individually and asked the parties whether they had any concerns with or objections to the instructions. When the court reached instruction number five, the following colloquy occurred:

"The Court: Instruction number five, burden of proof special defense.

"[The Defendant's Counsel]: No objection, Your Honor.

"[The Plaintiff's Counsel]: No objection, *except for the continuing storm doctrine.*

"The Court: That is correct. I'll just note that for the record. You don't have to even say that.

"[The Plaintiff's Counsel]: Okay.

"The Court: I'll note that you're going [to] have, anywhere we mention continuing storm . . . or ongoing storm, you're going to have an objection.

"[The Plaintiff's Counsel]: Correct." (Emphasis added.)

Before discussing instruction fifteen, which charged the jury on comparative negligence, the court, sua sponte, recognized the plaintiff's standing objection to the ongoing storm doctrine, stating, "And I know that you have an objection to anything dealing with the ongoing storm, [plaintiff]." Then, on instruction seventeen, which charged the jury on the ongoing storm doctrine, the court again, sua sponte, stated, "Other than the objection as [a] whole on ongoing storm, any other objections to [instruction 17]?" The plaintiff's counsel responded, "I'll just clarify what you just said, that [the ongoing storm doctrine] shouldn't be part of the case."

After the charging conference, both parties gave their closing arguments. In the plaintiff's closing argument, the plaintiff's counsel again argued that the present case was a "[d]efective premises case" that was the "result of a defective rail," which caused the plaintiff to fall. The plaintiff's counsel further argued that the ice and snow was unrelated to the plaintiff's fall, stating: "He saw that there was an ice storm downstairs and he assumed he would have no problem negotiating . . . going down to the garbage can. . . . He saw that there was water and ice on the porch. But that didn't—he had no issues with that. He actually walked safely on the porch and went to the rail. And he's been very consistent throughout his testimony today, yesterday and today, that as he went to the rail, the rail gave way causing him to lose his balance." Finally, with respect to the ice on the stairs and the porch, the plaintiff's counsel stated: "Now there's no question that there was ice on the staircase. . . . There's no question [that the plaintiff] slipped on the ice [but] that was after he was caused to fall. That is our claim. So he slipped on the ice after he was caused to fall from the defective rail." The defendant's counsel, however, argued in his closing argument that the plaintiff's testimony that it was the defective railing that caused his fall was not credible, given the plaintiff's many statements to medical personnel that he fell because of the ice and snow. The defendant's counsel further argued that the statements in the plaintiff's medical records, wherein the plaintiff said that the ice and snow caused his fall, showed that the plaintiff's fall was caused by the ongoing storm and not by the allegedly defective railing. Accordingly, the defendant's counsel asserted that the ongoing storm doctrine barred the plaintiff's recovery in the present case.

Thereafter, the court instructed the jury on the law of the case. With respect to the ongoing storm doctrine,

the court instructed the jury, in relevant part, as follows: "If you find that it was the ice that was *the proximate cause of the fall and not the alleged claims of a defective railing as alleged by the plaintiff*, you must consider whether the defense of ongoing storm is applicable. The defendant contends that at the time of the incident in question there was an ongoing storm or weather conditions which left some precipitation on the porch and *that this precipitation was the proximate cause of the plaintiff's fall and injuries or damages*. The plaintiff has specifically alleged . . . that the defendant was negligent in a number of ways, including the condition of the railing and the failure to isolate the icy area of the porch and stair.

"The defendant has alleged as a special defense that the plaintiff's recovery is barred by the ongoing storm doctrine. Therefore, *if you determine based upon the testimony and evidence that there was an ongoing storm and that the plaintiff's fall and subsequent injuries and damages were proximately caused . . . as a result of the storm, which placed ice on the porch and stairs that were the proximate cause of the injuries, you are to apply this doctrine.*" (Emphasis added.)

The court also provided the jury with a series of interrogatories, which stated in relevant part:

"We the jury find the following:

"1) Do you find the defendant proved by a preponderance of the evidence that at the time of the incident there was [a]n ongoing storm? . . .

"2) Do you find by a preponderance of the evidence that the defendant proved the icy condition from the ongoing storm was *the* proximate cause . . . of the fall and damages sustained by the plaintiff?" (Emphasis added.) The interrogatory form instructed the jury: "If the answer to number 2 is yes, sign this form and go to the defendant's verdict form."

The jury answered "[y]es" to both interrogatories about the ongoing storm doctrine. Consistent with the instructions on the interrogatory form, the jury answered no other interrogatories and the foreperson signed and dated the defendant's verdict form, returning a defendant's verdict, which the court accepted. Thereafter, the plaintiff filed a motion to set aside the verdict, alleging that the court (1) provided the jury with an incorrect interrogatory, (2) improperly charged the jury on causation, and (3) inappropriately instructed the jury on the ongoing storm doctrine. On February 24, 2020, the court held a hearing on the plaintiff's motion to set aside the verdict. On April 27, 2020, the court, by way of a memorandum of decision, denied the plaintiff's motion. This appeal followed.

On appeal, the plaintiff claims that the court erred when it instructed the jury on the ongoing storm doctrine because he clearly alleged that his fall was caused

by the defective railing, not by the defendant's failure to remove ice or snow, thus rendering the ongoing storm doctrine irrelevant. The plaintiff further argues that the court's error was harmful because the court's instruction and the interrogatories regarding the ongoing storm doctrine instructed the jury that it must return a verdict for the defendant if the storm was *the* proximate cause of the plaintiff's fall. The plaintiff argues that the court's instruction precluded the jury from considering whether the allegedly defective railing also was *a* proximate cause of the plaintiff's fall.

In response, the defendant argues that the court properly gave the ongoing storm doctrine instruction and properly submitted the corresponding interrogatories to the jury, the plaintiff expressly waived any objection to the court's proximate charge instruction, and the court's instruction on proximate cause was proper. In the alternative, the defendant argues that any error by the court was harmless because the judgment of the court can be affirmed on the grounds that the plaintiff failed to present sufficient evidence of a defect in the railing or that the defendant had notice of any defect.

I

We first address whether the court erred in including the ongoing storm doctrine in its jury instructions and interrogatories. We begin with the standards of review and principles of law that guide our analysis. "A challenge to the validity of jury instructions presents a question of law. Our review of this claim, therefore, is plenary. . . . We must decide whether the instructions, read as a whole, properly adapt the law to the case in question and provide the jury with sufficient guidance in reaching a correct verdict. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . It is established law that it is error for a court to submit to the jury an issue which is wholly unsupported by the evidence." (Citation omitted; internal quotation marks omitted.) *Iino* v. *Spalter*, 192 Conn. App. 421, 458, 218 A.3d 152 (2019).

"The power of the trial court to submit proper interrogatories to the jury, to be answered when returning [its] verdict, does not depend upon the consent of the parties or the authority of statute law. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the jury to answer pertinent interrogatories, as the proper administration of justice may require. . . . The trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content. . . . Moreover, [i]n order to establish reversible error, the [plaintiff] must prove both an abuse of discretion and a harm that resulted from such abuse." (Internal quotation

marks omitted.) *Champeau* v. *Blitzer*, 157 Conn. App. 201, 210, 115 A.3d 1126, cert. denied, 317 Conn. 909, 115 A.3d 1105 (2015).

In *Kraus* v. *Newton*, 211 Conn. 191, 197–98, 558 A.2d 240 (1989), our Supreme Court adopted the ongoing storm doctrine. The doctrine pertains "to the duty to protect invitees upon one's property when a snowstorm is in progress at the time of [a] plaintiff's alleged injury." *Belevich* v. *Renaissance I, LLC*, 207 Conn. App. 119, 125, 261 A.3d 1 (2021); see also *Sinert* v. *Olympia & York Development Co.*, 38 Conn. App. 844, 849, 664 A.2d 791 (ongoing storm doctrine pertains to landowner or other inviter's "duty of care with respect to others"), cert. denied, 235 Conn. 927, 667 A.2d 553 (1995). The court in *Kraus* defined the ongoing storm doctrine as follows: "[I]n the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps." *Kraus* v. *Newton*, supra, 197–98.

The ongoing storm doctrine, however, "does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended or whether a plaintiff's injury has resulted from new ice or old ice when the effects of separate storms begin to converge." Id., 198. The doctrine also does not apply when there is evidence that a preexisting dangerous condition on the defendant's property, unrelated to the ongoing storm, caused the plaintiff's injury. Id. (ongoing storm doctrine applied because no evidence of preexisting dangerous condition on premises); see also *Seitz* v. *J. C. Penney Properties, Inc.*, United States District Court, Docket No. 3:15-CV-01131 (VAB) (D. Conn. September 28, 2017) ("[t]he ongoing storm doctrine is inapplicable when an invitee's injury stems from a 'preexisting dangerous condition upon the defendant's premises' . . . rather than the ongoing storm"); *Berlinger* v. *Kudej*, 120 Conn. App. 432, 436–37, 991 A.2d 716 (2010) (finding trial court's rendering of summary judgment in case involving ongoing storm doctrine improper when there was genuine issue of fact as to whether ice on driveway had accumulated before ongoing storm); *Mejias* v. *New York*, 183 App. Div. 3d 886, 887–88, 125 N.Y.S.3d 112 (2020) (denying motion for summary judgment with respect to negligence claim in case involving ongoing storm doctrine because defendants "failed to eliminate triable issues of fact as to whether an allegedly defective condition with the step caused or contributed to the plaintiff's injuries").

In the present case, the ongoing storm doctrine was inapplicable and irrelevant because the plaintiff was not claiming that his fall was due to snow and ice that

the defendant had failed to remove or treat. The record is clear that the theory of the plaintiff's case as presented to the jury was that his fall was due to the defective railing and not due to the presence of snow and ice on the porch.

The plaintiff repeatedly testified at trial that he lost his balance and fell after the defective railing moved when he grabbed it and that he did not slip on any ice or snow that the defendant had neglected to remove. Furthermore, his counsel argued to the jury in both his opening statement and closing argument that the plaintiff's fall was caused by the defective railing. The plaintiff's counsel also made clear to the court both when objecting to the defendant's request to add a special defense based on the ongoing storm doctrine and when arguing against the defendant's proposed ongoing storm charge that the plaintiff's case was premised solely on the defective railing. When the defendant's counsel argued that the allegation in the complaint that the defendant "failed to erect signs, barriers or otherwise isolate the icy area of the porch and its railings" implicated the ongoing storm doctrine, the plaintiff moved to amend the complaint to remove that allegation and his counsel correctly noted that the plaintiff had presented no evidence in support of that allegation so there was no basis to submit it to the jury. The defendant's counsel even acknowledged that if that allegation was removed from the case there would be no need to plead a special defense based on the ongoing storm doctrine.

Because the plaintiff never claimed that the defendant breached its duty of care by failing to remove ice and snow from the porch and/or stairs and, instead, claimed solely that the defective railing (and the defendant's failure to maintain and repair the railing) caused his fall, the ongoing storm doctrine, which is about duty, not causation, was inapplicable. See *Kraus* v. *Newton*, supra, 211 Conn. 197–98; *Belevich* v. *Renaissance I, LLC*, supra, 207 Conn. App. 125. Specifically, the liability issue the jury had to resolve was whether the plaintiff's fall was caused by the defective railing, the accumulated snow or ice, or the plaintiff's own carelessness. Whether the snow and ice was caused by an ongoing storm or a previous storm simply was irrelevant to the resolution of this issue.

This is not to say that the evidence of ice and snow, including the evidence introduced by the defendant that the plaintiff initially blamed his fall on the ice, was irrelevant. To the contrary, such evidence was highly relevant, but it was relevant only as to what *caused* the plaintiff's fall, not as to whether the defendant had a duty to clear or treat the snow and ice in light of an ongoing storm. Thus, although the defendant was free to argue to the jury that the plaintiff could not prevail because his injuries were caused by the ice and snow,

not the defective railing, that causation argument does not implicate the ongoing storm doctrine.

The fact that the defendant pleaded the ongoing storm doctrine as a special defense makes no difference to our analysis. Just because the defendant pleaded the special defense of an ongoing storm does not mean that the court should have instructed the jury on the doctrine. Courts are permitted to instruct juries only when the proposed instructions are supported by the evidence. See *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 139, 757 A.2d 516 (2000) ("trial court should instruct the jury in accordance with a party's request to charge if the proposed instructions are reasonably supported by the evidence"). Here, as explained in the preceding paragraph, the ongoing storm doctrine was irrelevant to the plaintiff's case or the issue of causation, and, therefore, an instruction on the doctrine could not reasonably have been supported by the evidence. Thus, because the ongoing storm doctrine was inapplicable, the jury should neither have been instructed on it nor asked interrogatories about it even though the defendant asserted the doctrine as a special defense. See id.

Accordingly, because the plaintiff never pursued a claim that the defendant breached its duty of care by failing to remove ice and snow and, instead, alleged that a preexisting defect unrelated to the ongoing storm caused his fall, the ongoing storm doctrine has no application in the present case. See *Kraus* v. *Newton*, supra, 211 Conn. 197–98. Consequently, the court erred when it instructed the jury on the doctrine. See *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 774, 720 A.2d 242 (1998) (jury instructions must "correctly adapt the law to the case in question and . . . provide the jury with sufficient guidance" (internal quotation marks omitted)). For this same reason, the court's inclusion of the ongoing storm doctrine in the jury interrogatories was error.

## II

We next consider whether the court's ongoing storm instruction and interrogatories were harmful. "[N]ot every error is harmful. . . . [B]efore a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict. . . . [W]e consider not only the nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury, but the likelihood of actual prejudice as reflected in the individual trial record, taking into account (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled. . . . The inclusion of an inapplicable doctrine may be harmful if it confuses and misleads the jury . . . ." (Citations

omitted; internal quotation marks omitted.) *Kos* v. *Lawrence + Memorial Hospital*, 334 Conn. 823, 845, 225 A.3d 261 (2020). Similarly, the plaintiff must prove that the court's ongoing storm interrogatories prejudiced him. *Champeau* v. *Blitzer*, supra, 157 Conn. App. 210.

The plaintiff argues that the court's erroneous instruction and interrogatories were harmful because they misled the jury by making an irrelevant issue "a predominate feature of the case." He further argues that the wording of the instruction and interrogatories "misled the jury into believing that the defendant's negligence as to the defective railing had to be the sole proximate cause in order to permit a plaintiff's verdict. The trial court's ongoing storm instructions repeatedly intoned that recovery would be 'barred' if the storm proximately caused the injuries . . . ."[4] (Citations omitted.) We agree with the plaintiff.

First, by instructing the jury on a doctrine that was irrelevant to the case, the court likely misled and confused the jury. See *Faulkner* v. *Reid*, 176 Conn. 280, 281, 407 A.2d 958 (1978) ("jury can only be confused and misled by interjecting into their deliberations a doctrine inapplicable to the evidence as a matter of law"). This confusion was compounded by the court's decision to have the jury answer questions about the ongoing storm doctrine first and then instructing the jury that if it determined that the ongoing storm was the proximate cause of the plaintiff's injuries, it should not answer any other interrogatories and should return a defendant's verdict.

Second, the jury likely was confused and misled by the court's actual instruction on the ongoing storm doctrine. The instruction three times told the jury to consider whether the ongoing storm was *the* proximate cause of the plaintiff's injuries. First, the court began its instruction by telling the jury: "If you find that it was the ice that was *the proximate cause of the fall and not the alleged claims of a defective railing as alleged by the plaintiff*, you must consider whether the defense of ongoing storm is applicable." (Emphasis added.) Then, after telling the jury that the defendant contended that the ongoing storm was the proximate cause of the plaintiff's fall, the court instructed the jury that if it determined "that there was an ongoing storm and that the plaintiff's fall and subsequent injuries and damages were *proximately caused* . . . as a result of the storm, which placed ice on the porch and stairs that were *the proximate cause* of the injuries," the jury had to apply the ongoing storm doctrine. (Emphasis added.) Consistent with these instructions, the interrogatories the court submitted to the jury asked whether there was an ongoing storm at the time of the plaintiff's fall and whether "the defendant proved the icy condition from the ongoing storm was *the proximate cause*" of the plaintiff's fall. (Emphasis added.)

As described in detail in part I of this opinion, this instruction was an incorrect statement of the law because it told the jury that the existence of an ongoing storm impacted its causation analysis; the doctrine relates solely to duty, however, which was not at issue in the case. See *Kraus* v. *Newton*, supra, 211 Conn. 197–98 (ongoing storm doctrine relates to defendant's duty of care to "exercise reasonable diligence in removing dangerous accumulations of snow and ice," *not* to cause of plaintiff's injuries); *Cooks* v. *O'Brien Properties, Inc.*, 48 Conn. App. 339, 343, 710 A.2d 788 (1998) (defendant's proposed instruction, which stated that, "[i]f you find that the plaintiff fell during an ongoing storm of freezing rain, sleet and/or snow, and that the ice or snow *caused* the fall, then you *must* find for the defendant," incorrectly stated holding of *Kraus* (emphasis altered; internal quotation marks omitted)). Such an error likely confused the jury by misleading it into thinking that whether the storm was ongoing impacted its analysis of what factors proximately caused the plaintiff's injuries.

Moreover, the court's repeated reference in the charge to "the" proximate cause and its suggestion that the jury had to find either the railing or the ongoing storm to be the proximate cause of the plaintiff's injuries was incorrect and likely misleading. By telling the jury that the ongoing storm doctrine was implicated if it found "that it was the ice that was the proximate cause of the fall and not the alleged claims of a defective railing as alleged by the plaintiff," the court essentially told the jury that there could be only a single proximate cause for the plaintiff's fall and that that proximate cause was *either* the ongoing storm *or* the defective railing but not *both*. Such an instruction ignores the fact that an injury can have more than one proximate cause; see *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 383, 441 A.2d 620 (1982); and that, in the present case, it was possible that the plaintiff's fall was caused by *both* the icy porch and the defective railing. By instructing the jury to the contrary, it is likely that the court misled the jury into thinking that it had to return a verdict for the defendant if it concluded that the plaintiff's fall was caused by the ongoing storm, even if it also concluded that the defective railing contributed to the fall. We have, on a number of occasions, concluded that instructing a jury to determine if negligence is *the* proximate cause, as opposed to *a* proximate cause, of a party's injuries misleads a jury. See *Champeau* v. *Blitzer*, supra, 157 Conn. App. 212–13 (interrogatory that used language of " '*the*' proximate cause," instead of " '*a*' proximate cause," gave jury " 'misleading impression that it had to find that [the defendants'] breach of the standard of care was the sole proximate cause of [the decedent's] death' " (emphasis added)); *Barksdale* v. *Harris*, 30 Conn. App. 754, 757–58, 622 A.2d 597 (new trial required because court's repeated

use of " '*the* proximate cause,' " instead of " '*a* proximate cause,' " could have misled jury (emphasis added)), cert. denied, 225 Conn. 927, 625 A.2d 825 (1993).

The defendant argues that these cases are inapposite to the present case because in those cases the concern was whether the incorrect instruction improperly heightened the plaintiff's burden of proof by requiring the plaintiff to prove that the defendant's negligence was the sole proximate cause and not a proximate cause of the plaintiff's damages. Here, the instruction at issue related to the defendant's special defense, as to which it had the burden of proof. Consequently, the defendant argues that the court's reference to the storm being "the proximate cause" meant that the jury had to determine that the storm was the sole proximate cause for the defendant to prevail. As a result, the defendant argues, the instruction and corresponding interrogatories could not have harmed the plaintiff. We are not persuaded.

The court's instruction did not tell the jury to decide if the ongoing storm was the proximate cause of the plaintiff's injuries as a standalone determination. Instead, the court expressly linked that determination with a determination of whether the defective railing was the proximate cause. The harm to the plaintiff is that the court essentially told the jury to choose between two potential proximate causes.

The defendant also argues that the court's erroneous instructions and interrogatories do not require reversal because they were corrected by the court's general causation instruction, which repeatedly instructed the jury that the plaintiff needed to prove only that the defendant's negligence was "*a* substantial factor in causing the resulting injury or loss"; (emphasis added); and told the jury that "the defendant's conduct can be a proximate cause of an injury if it is not the only cause or even the most significant cause of the injury, provided that it contribute[d] materially to the production of the injury, and, thus, [was] a substantial factor in bringing it . . . about."

The defendant argues that the circumstances in the present case are similar to those in *Phelps* v. *Lankes*, 74 Conn. App. 597, 813 A.2d 100 (2003). In *Phelps*, this court concluded that reversal was not required despite the trial court's charging the jury that the plaintiff had to prove that the defendant's negligence was "*the* proximate cause of the injuries claimed." (Emphasis added; internal quotation marks omitted.) Id., 603. We reached that conclusion because the trial court's single incorrect statement in its causation instruction was followed immediately thereafter, in the same instruction, by the court's twice instructing the jury that the plaintiff needed to prove that the defendant's negligence was "a substantial factor" in causing the plaintiff's injuries.

(Emphasis omitted.) Id. In light of the entire instruction, this court concluded that, "[d]espite the challenged instruction, the court's charge as a whole was not improper." Id.

The defendant's reliance on *Phelps* is misplaced. In the present case, the court's erroneous instruction was given independent of its general causation instruction. In fact, its juxtaposition to the court's general causation instruction is significant. The court began its ongoing storm instruction after instructing the jury generally on causation and on the defendant's special defense that the plaintiff's injuries were caused by his own negligence. After discussing how to award damages if the jury concluded that both the defendant's negligence and the plaintiff's negligence were proximate causes of his injuries, the court concluded this part of its charge by correctly stating: "If you find that both parties were negligent and the negligence of each proximately caused the injuries, you must reduce your award in accordance with this comparative negligence rule."

The court then told the jury that it was going to talk about the ongoing storm defense. It instructed the jury: "If you find that it was the ice that was the proximate cause of the fall and not the alleged claims of a defective railing as alleged by the plaintiff, you must consider whether the defense of ongoing storm is applicable." The manner in which the court instructed the jury regarding the ongoing storm doctrine was in stark contrast to how it instructed the jury regarding causation in general and as related to comparative negligence. As to those charges, the court instructed the jury that there could be more than one proximate cause. When it came to the ongoing storm doctrine, though, the court instructed the jury that it had to determine whether the ice or the railing was "the" proximate cause. Thus, it is likely that the jury was misled into believing that the proximate cause analysis is different when the ongoing storm doctrine is at issue. Further, this erroneous guidance existed in both the instructions *and* the interrogatories. Thus, *Phelps* is inapposite to the present case.

The present case is closer to *Champeau* v. *Blitzer*, supra, 157 Conn. App. 212, in which this court held that the court's incorrect use of " 'the' proximate cause" in the jury interrogatories "was exacerbated by the jury charge in which the trial court alternated between references to 'the' proximate cause and 'a' proximate cause . . . ." The court concluded that the jury was misled by the charge even though the court used " 'the' proximate cause" only twice in the whole charge. Id. Specifically, this court held: "Although in the present case, there were only two instances in the charge to the jury that were improper, as we previously indicated, those errors were exacerbated by an interrogatory completed by the jury that also contained the improper standard for proximate cause. Unlike in *Phelps*, which involved only

one instance of an improper instruction, the jury charge in the present case was likely to have had a deleterious effect, confusing the jury as to what the appropriate standard was for proximate cause." Id., 213. The same is true in the present case.

Accordingly, because the court likely confused and misled the jury by incorrectly instructing it on the ongoing storm doctrine, as well as the role that causation played with respect to the doctrine, we conclude that such errors were harmful.

### III

Finally, we address the defendant's alternative grounds for affirmance. The defendant argues that the court's instructional error was not harmful because the plaintiff failed to prove two other essential elements of his claim and failed to submit necessary expert evidence in support of his claim. Specifically, the defendant claims that the plaintiff failed (1) to introduce evidence that the railing was defective, (2) to present expert testimony as to the standard of care regarding railings, and (3) to prove that the defendant had notice of the alleged defect. We are not persuaded.

First, the plaintiff clearly introduced evidence that the railing was defective because he testified that two screws were missing from where the railing connected to the building and that the top of the railing was rotten. The plaintiff further testified that, due to those defects, the railing moved when he grabbed it. That testimony was enough for the jury to conclude that the railing was defective. Second, the plaintiff was not required to introduce expert testimony as to the standard of care for railings because such knowledge is within the ken of an average juror. See *Way* v. *Pavent*, 179 Conn. 377, 380, 426 A.2d 780 (1979) ("[t]he trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters"); see also *Bader* v. *United Orthodox Synagogue*, 148 Conn. 449, 454, 172 A.2d 192 (1961) ("[e]xpert testimony was not required to support the claim of the plaintiff that the absence of a proper or suitable porch railing was a structural defect and therefore constituted . . . negligence"). Finally, the plaintiff also introduced sufficient evidence for the jury to conclude that the defendant had constructive notice of the defective railing. The plaintiff testified that the railing was defective and that it had been defective for twelve years, and the defendant's principal testified that he routinely inspected the railings at the building. On the basis of this evidence, the jury reasonably could have concluded that the defendant had constructive knowledge of the defect. See *Pollack* v. *Gampel*, 163 Conn. 462, 468, 313 A.2d 73 (1972) (plaintiff can establish constructive notice by showing that, if defendant had "exercised a reasonable inspection of the premises, [the defendant] would have discovered [the defect]"). There-

fore, none of these claims undermines our conclusion that the court's instructional error was harmful and that reversal is thus required.

In sum, the court erred in instructing the jury on the inapplicable ongoing storm doctrine and in submitting to the jury interrogatories regarding the doctrine, and such errors were harmful because they likely confused and misled the jury. Accordingly, reversal is required.

The judgment is reversed and the case is remanded for a new trial.

In this opinion ELGO, J., concurred.

[1] The plaintiff's complaint also originally named Verdura Building, LLC, as a defendant to the underlying action. On July 29, 2019, the complaint was withdrawn as to that party. Accordingly, Verdura Building, LLC, did not participate in this appeal, and, in this opinion we refer to Verdura Construction, LLC, as the defendant.

[2] The plaintiff also claims that the court erred when it (1) gave the jury an incorrect instruction on proximate cause and (2) refused to grant the plaintiff leave to amend his complaint. We address the court's proximate cause instruction not as a separate claim but as part of our analysis as to why the court's ongoing storm instruction and jury interrogatories were harmful. Because we conclude that the judgment must be reversed because of the court's instructional error, we need not consider the plaintiff's claim regarding his motion to amend his complaint.

[3] Under the ongoing storm doctrine, plaintiffs cannot recover damages for injuries that resulted from ice and snow and that occurred during or a reasonable time after a winter storm because property owners are allowed to wait until the end of such a storm before removing snow and ice. See *Kraus* v. *Newton*, 211 Conn. 191, 197–98, 558 A.2d 240 (1989). The nuances of this doctrine will be discussed subsequently in this opinion.

[4] The plaintiff further claims on appeal that the court's proximate cause instruction suffered from the same deficiency. In response, the defendant argues that the plaintiff waived any objection to the proximate cause instruction by not objecting to it and that the instruction overall set forth a correct statement of the law. Because we conclude that the ongoing storm instruction and interrogatories were given in error, and because they misstated the law of proximate cause, we need not address the plaintiff's claim as to the court's general proximate cause instruction.